Argued and submitted February 12, affirmed May 1, 1996

# EMPLOYMENT DEPARTMENT
*Petitioner,*

*v.*

# Peter M. FURSETH,
*Respondent.*

(95-AB-1185, 95-AB-1326; CA A89421)

915 P2d 1043

Richard D. Wasserman, Assistant Attorney General, argued the cause for petitioner. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

No appearance for respondent Peter M. Furseth.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

## RIGGS, P. J.

The Employment Department seeks review of an order of the Employment Appeals Board (EAB), contending that EAB erred in holding that the department is estopped to deny claimant's request for additional Trade Readjustment Allowances (TRA). We affirm.

Oregon participates in the Federal Trade Adjustment Assistance Program through an agreement with the Secretary of Labor, 19 USC § 2311, and administers TRAs, a federal benefit paid pursuant to the federal Trade Act of 1974, which is intended to assist individuals in finding suitable employment when they become unemployed as a result of increased imports. TRAs are weekly allowances, in an amount equal to the weekly unemployment insurance benefit, paid to eligible workers enrolled in training programs approved by the Secretary of Labor. The funds used to pay TRA benefits are provided exclusively by the federal government, 19 USC § 2313, but payments are made by the state, which is then reimbursed by the federal government. In administering the TRA program, the state acts "as agent of the United States," 19 USC §§ 2311, 2313, and must comply with the federal Act. 19 USC § 2311(a)(1). In determining the various criteria for eligibility and disqualification of an applicant for TRA, such as whether the person is unemployed and able and available to work, the state is to apply "applicable state law," that is, the unemployment compensation law of the state in which the person is entitled to benefits, 19 USC §§ 2294, 2319(10); CFR §§ 617.3, 617.16, unless that law is inconsistent with the provisions of 19 USC. 19 USC § 2294. The state may enact its own "supplemental procedures" for administration of the Act, as long as they are not inconsistent with the Act or the regulations. 29 CFR § 617.54. Such procedures are subject to approval by the Department. An agency's determination as to the eligibility of any applicant for TRA benefits is "subject to review in the same manner and to the same extent as determinations under the applicable State law and only in that manner and to that extent." 19 USC § 2311(d).

The Act and its implementing regulations are to be liberally construed so as to carry out the purpose of the Act.

20 CFR § 617.52(a). Additionally, the Act is to be construed in a manner that ensures, so far as possible, the uniform interpretation and application of the Act throughout the United States. 20 CFR § 617.52(b). To effectuate the purpose and rules of construction and to ensure uniform application of the Act and its regulations, the states are required to forward to the Department of Labor a copy of any judicial or administrative decision ruling on an individual's entitlement to benefits. If the Department of Labor believes that a state's determination is inconsistent with its interpretations, then the state shall issue a redetermination or it shall appeal the determination if possible and shall not follow such inconsistent determination. If a state's determination is inconsistent with the federal interpretation, the Secretary must decide whether the state should be required to restore to the United States sums paid under the determination or whether, in the absence of that restoration, the agreement with the state should be terminated. Additionally, if the state treats the inconsistent determination as precedent for any future case, the Secretary decides whether the agreement with the state will be terminated. 20 CFR § 617.52(c)(4).

The facts of this case, as stated in EAB's opinion, are undisputed:

"(1) Claimant applied for basic Trade Readjustment Allowances (basic TRA) on May 12, 1994. (2) The Employment Department approved claimant's application and paid claimant basic TRA, through the first week of 1995. (3) At that time, the Employment Department automatically began to issue claimant additional Trade Readjustment Allowances (additional TRA). (4) Upon review, however, the Employment Department determined that claimant was ineligible for additional TRA, because he was not enrolled in training classes, and it denied him further benefits.

"(5) Claimant attended classes in Environmental Science at Concordia College, from September, 1993, to September, 1994. (6) The college postponed classes which claimant was registered to attend in November, 1994. (7) The classes were postponed until May, 1995. (8) When claimant received notice that the college was going to postpone his autumn, 1994 classes, he spoke to Bruce Crawford, an Employment Division representative. (9) Crawford

assured him that his allowances would continue, so long as the Employment Department issued him a waiver. (10) The Employment Department did so, and claimant's basic TRA continued until he exhausted the account, the first week of 1995. (11) The Employment Department issued claimant a notice, approximately two weeks prior to the expiration of his basic TRA, informing claimant that his basic TRA would soon come to an end. (12) Claimant contacted Evelyn Roth, another Employment Department representative, who told claimant that he would automatically receive additional TRA at the time that his basic TRA came to an end. (13) That would have been true if not for the fact that claimant was on a waiver, and not in training. (14) Federal regulations require, however, that an applicant be enrolled in training to receive additional TRA; no waiver is available. (15) When claimant failed to receive a check, sometime soon after his discussion with Roth, he contacted Crawford. (16) Crawford again told him that he would continue to receive allowances and indicated that the Employment Department had recently mailed him a check or checks, but Crawford called claimant back later in the week and informed him that, because claimant could not receive additional TRA benefits under a waiver, as he had basic TRA, his benefits were in danger of being lost.

"(17) At that time, Crawford suggested to claimant that he return the last basic TRA check which the Employment Department had issued him, to 'secure his TRA additional benefits.' (May 25, 1995 hearing, T. 14.) (18) By deferring his claim on the last of his basic TRA, claimant would have delayed the start of his eligibility period for additional TRA. (19) Claimant agreed to do so, but later changed his mind. (20) Had the Employment Department informed claimant, in autumn, 1994, that he needed to be enrolled in training to qualify for additional TRA, claimant would have registered for classes outside of his core curriculum, which nevertheless were relevant to his course of study."

EAB found that claimant had exhausted his *basic* TRA during the first week of 1995. At issue is his eligibility for *additional* TRA under 20 CFR § 617.15(b)(3), which provides:

"Except as provided in paragraph (d) of this section [regarding scheduled breaks in training], payments of TRA for additional weeks may be made only for those weeks in

the 26-week eligibility period during which the individual is actually participating fully in training approved under § 617.22(a)."

Furthermore, 20 CFR § 617.19(a)(1)(ii) provides:

"As a principal condition of entitlement to additional TRA payments, all individuals must actually be participating in a training program approved under § 617.22(a), for all weeks beginning before November 21, 1988, and for all weeks beginning on and after November 21, 1988. * * * Paragraph (a)(2) of this section [regarding waiver of participation in training] is not applicable in regard to additional TRA, and *the participation in training requirement of paragraph (a)(1)(ii) of this section may not be waived under any circumstances.*" (Emphasis supplied.)

EAB found that claimant was not eligible for additional TRA during any weeks in which he was not enrolled in training, including the weeks at issue in this case. Claimant contended that the Department should nonetheless provide him with the additional benefits, because its representative misled him to believe that his benefits would continue automatically while he was on a waiver of participation in training, and that his failure to qualify was caused by the Department's failure to advise him correctly concerning eligibility requirements. EAB agreed and held that the doctrine of equitable estoppel compels the state to pay additional TRA benefits to claimant:

"We conclude that the present case is one calling for the application of the doctrine of equitable estoppel. Here, the Employment Department had an affirmative obligation to inform claimant fully about the details of his eligibility for additional TRA and to outline for him the consequences of a lapse in training. The department failed to fulfill that obligation. If not for the department's failure to provide adequate information, claimant would have acted to ensure his receipt of allowances. The department must be estopped from denying claimant additional TRA."

In its petition for review, the Department contends that EAB's decision is inconsistent with the Act; that, because the TRA program is federally funded and the state administers TRAs as an agent for the federal government, federal law is applicable to determine whether the Department is estopped

to deny claimant benefits and that federal law provides no basis for application of the doctrine of equitable estoppel.

The unmistakable import of the Act and its regulations is to prohibit state decisions that are inconsistent with the Act. In the light of that, our first inquiry is whether EAB's decision to apply the doctrine of equitable estoppel to bar the department from withholding additional TRA benefits is inconsistent with the Act.

As noted above, 20 CFR § 617.19(a)(1)(ii) provides that the requirement to participate in training in paragraph (a)(1)(ii) of the section *may not be waived under any circumstances*. In our view, application of the doctrine of equitable estoppel against the state does not effect a waiver of the participation-in-training requirement; it merely prevents the state from withholding benefits to an individual who has failed to satisfy that requirement because of the state's failure to provide accurate advice. That is consistent with the Act's stated requirement of liberal construction so as to carry out its purpose. Accordingly, we conclude that application of the doctrine of equitable estoppel to bar the state from withholding benefits is not inconsistent with the provisions of 20 CFR § 617.19(a)(1)(ii).

Further, contrary to the state's contention, we hold that this claim estops only the state, not the federal government. Although the state acts as the agent of the federal government in administering the TRA program, federal law is clear that the state is reimbursed only for benefits that are due under the Act; if benefits are paid that are not due, the state is obligated to restore those amounts to the federal government or risk the termination of its agreement with the Secretary of Labor. Accordingly, the state bears the ultimate responsibility for its own errors in administering the Act. EAB correctly concluded that the state's substantive law is applicable to determine whether the state should be estopped to withhold benefits.

Finally, as EAB concluded, there is ample authority for application of the doctrine of equitable estoppel under the facts of this case, where it is conceded that the state gave claimant misleading information and that but for that misinformation claimant would have taken the steps necessary

to meet the requirements for eligibility. *Pilgrim Turkey Packers v. Dept. of Rev.*, 261 Or 305, 310, 493 P2d 1372 (1972); *Swift & McCormick Metal Processors v. Durbin*, 117 Or App 605, 845 P2d 931 (1993); *Employment Div. v. Western Graphics Corp.*, 76 Or App 608, 614, 710 P2d 788 (1985).

Affirmed.