**Arnaz CRAWFORD, Appellant,**

v.

**DIVISION OF EMPLOYMENT SECURITY, Respondent.**

No. SC 92208.

Supreme Court of Missouri, En Banc.

July 31, 2012.

Motion for Rehearing or Modification Denied Sept. 25, 2012.

---

Martin L. Perron, Maria V. Perron, The Perron Law Firm PC, John J. Ammann, Julia Hodges, St. Louis, for Appellant.

Jeannie Desir Mitchell, Division of Employment Security, Jefferson City, for Respondent.

RICHARD B. TEITELMAN, Chief Justice.

Arnaz Crawford appeals from the decision of the labor and industrial relations commission finding that he was disqualified from receiving unemployment benefits and ordering him to repay those benefits received while he was ineligible. The commission's decision is reversed in part and affirmed in part.

## FACTS

Crawford was fired from his job in January 2009. Shortly thereafter, he was admitted voluntarily to a state mental facility for one week. Crawford's physician advised him to apply for Social Security disability benefits ("SSDI benefits") because his mental condition rendered him unable to work. In February 2009, Crawford applied for SSDI benefits. The social security administration denied the claim. Crawford appealed and requested a hearing.

While his SSDI appeal was pending, Crawford attempted to find a job unsuccessfully. On July 27, 2009, Crawford applied for state unemployment benefits, which require a showing that the claimant

is unemployed but is able to work. The Division of Employment Security awarded unemployment benefits to Crawford, and he received them until March 20, 2010.

On March 2, 2010, the social security administration determined that Crawford had been disabled and eligible for SSDI benefits since January 29, 2009. It considered Crawford's psychological and vocational evaluations and found that he "is not mentally capable of full-time competitive employment." The social security administration also found that there were no jobs existing in significant numbers that Crawford could perform.

Crawford notified the division of employment security that the social security administration determined that he was eligible for benefits. On March 31, 2010, a division deputy reconsidered the division's prior determination that Crawford was eligible for unemployment compensation. The deputy determined that Crawford was unable to work from December 20, 2009, to March 20, 2010, and, therefore, was ineligible for unemployment compensation benefits. The deputy also determined that Crawford had received $3,080 in unemployment compensation benefits that he was ineligible to receive.

An appeals tribunal affirmed the deputy's decisions. The commission affirmed the decision of the appeals tribunal. The commission recognized Crawford's willingness to work but found that he was not able to work within the meaning of the Missouri employment security law and, therefore, was ineligible for unemployment benefits. Crawford appeals.

*Standard of Review*

The Missouri Constitution, article V, section 18, provides for judicial review of the commission's award to determine whether the award is "supported by competent and substantial evidence upon the whole record." Similarly, section 288.210(4) provides that an appellate court may set aside the commission's decision regarding an unemployment compensation claim if there "was no sufficient competent evidence in the record to warrant the making of the award."

I. *Eligibility for Benefits*

In his first point on appeal, Crawford raises four distinct arguments challenging the commission's decisions finding that he was not able to work and, therefore, was ineligible to receive unemployment benefits. First, he asserts that the division's ineligibility determination violates the Supremacy Clause because they were in direct conflict with social security administration's award of disability benefits. Second, he asserts that the commission erred in affirming the decisions that he was ineligible for unemployment benefits because the division's initial determinations were reconsidered by the deputy without the showing of "good cause" necessary for a re-determination of eligibility for benefits. Third, he asserts that the decisions violated section 288.215 because the commission improperly relied on the social security administration's finding that Crawford was disabled. Finally, Crawford asserts that there was no substantial and competent evidence that he was unable to work.

A. *Supremacy Clause*

Crawford's Supremacy Clause argument is premised on the assertion that the commission's ineligibility determinations conflict with regulations that allow the social security administration to reduce SSDI benefits by the amount of Crawford's state unemployment compensation benefits. *See* 20 C.F.R. 416.1104, 1120–1121. Crawford argues that it would be absurd and improper to allow a state to determine retroactively that a claimant is ineligible for unemployment benefits after

the claimant's SSDI benefits already have been reduced because of the receipt of those state unemployment benefits.

Crawford's argument fails because the SSDI regulations provide that a person can receive federal disability benefits even if he is able to engage in part-time work.[1] Therefore, some recipients of SSDI benefits are entitled to Missouri unemployment benefits and others are not. Nothing in the social security regulations prohibits the division from finding retroactively that a recipient of SSDI benefits is ineligible for state unemployment benefits because, in fact, they are not able to work. Further, after the division found Crawford ineligible and notified him of the overpayment, Crawford had the option of appealing the SSDI decision to account for the fact that he was no longer eligible for state unemployment benefits.

■ Crawford also argues that the division's actions frustrate the purpose of the Social Security Act, thereby violating the Supremacy Clause under *Nash v. Florida Industrial Comm'n,* 388 U.S. 335 (1967). In *Nash,* the United States Supreme Court held that Florida constitutionally could not refuse to award unemployment benefits to someone who had brought federal unfair labor practice charges. *Nash* is distinguishable because, in this case, there is no indication that Missouri is punishing Crawford for participating in the federal social security disability program. There is no Supremacy Clause violation.

B. *Good Cause*

■ Crawford asserts that the commission erred in affirming the decisions that he was ineligible for unemployment bene-

fits because the division's initial determinations were reconsidered by the deputy without the showing of "good cause" necessary for a redetermination of eligibility for benefits. Section 288.070.5 provides, in pertinent part, that "[t]he deputy may, however, not later than one year following the end of a benefit year, for good cause, reconsider any determination on any claim...." Crawford asserts that the commission erred in affirming the decision that he was ineligible for benefits because the deputy did not have "good cause" to reconsider the eligibility issue.

■ "An issue appropriate for, but not addressed with the commission, cannot be litigated on appeal." *St. John's Mercy Health System v. Division of Employment Security,* 273 S.W.3d 510, 515 (Mo. banc 2009). In his application for review filed with the commission, Crawford asserted that the appeals tribunal's decisions:

> are not supported by competent substantial evidence, are against the weight of the evidence, and misstate the law in a number of respects, including especially the finding that Mr. Crawford was not able to work during the weeks mentioned and the erroneous and unnecessary conclusion that to hold otherwise would be inconsistent with a subsequent decision of the Social security administration.

The issue of the division's "good cause" to reconsider Crawford's eligibility was a matter that is appropriate for review by the commission. *See, e.g., Roberts v. Labor and Indus. Relations Commission,* 869 S.W.2d 139, 143 (Mo.App.1993) (the commission correctly interpreted and ap-

---

1. The applicable social security regulations provide that disability benefits will stop if the recipient engages in "substantial gainful activity." *In re Marriage of Lindhorst,* 347 S.W.3d 474, 476 (Mo. banc 2011), citing 20 C.F.R. 404.401a. A recipient is deemed to have engaged in substantial gainful activity if the recipient works more than 80 hours per month or earns more than a certain monthly net income. *Lindhorst,* 347 S.W.3d at 476, citing 20 C.F.R 404.1592.

plied section 288.070.5 and was authorized to reconsider the claimant's eligibility for benefits). The issue of "good cause" to reconsider the initial eligibility determination relates to the division's statutory authority to enter a new decision. Crawford's application for review does not assert that the division lacked statutory authority to reconsider his eligibility for benefits. Instead, Crawford's application for review asserts that the division's decision was against the weight of the evidence. Therefore, the issue of "good cause" is not preserved for appeal.

### C. *Section 288.215.2*

■ Crawford asserts that the commission violated section 288.215 by improperly relying on the social security administration's finding that Crawford was disabled. Section 288.215.2 provides:

Any finding of fact, conclusion of law, judgment or order made by an arbitrator, commissioner, commission, administrative law judge, judge or any other person or body with authority to make findings of fact or law in any proceeding not brought under this chapter shall not be binding or conclusive on an appeals tribunal or the labor and industrial relations commission in any subsequent or separate proceeding brought under this chapter, regardless of whether the prior action was between the same or related parties or involved the same facts.

Section 288.215.2 "reflects a legislative intent to prohibit proceedings outside the Missouri Employment Security Law from having a binding effect upon the Commission." *Higgins v. Missouri Division of Employment Security,* 167 S.W.3d 275, 281 (Mo.App.2005). "However, that the findings of fact, conclusions of law, judgments, or orders entered in such independent proceedings are not binding or

conclusive upon the Commission or the Division's Appeals Tribunal does not mean they are to be or must be entirely ignored." *K & D Auto Body, Inc. v. Division of Employment Sec.,* 171 S.W.3d 100, 113 (Mo.App.2005). The fact that the commission considered the social security administration's disability finding does not amount to a violation of section 288.215.2.

### D. *Substantial and Competent Evidence*

■ Finally, Crawford asserts that there was no substantial and competent evidence that he was unable to work. The record demonstrates that the commission did not consider itself bound by the social security administration's decision. For instance, in exhibits Crawford provided to the commission, he testified that although he wanted to work, his physician had told him that he "was real sick" and should not be working. Crawford also testified that he would hear voices, talk to himself and pace around and that these actions would lead to his discharge from employment. Therefore, there was substantial and competent evidence supporting the commission's decision.[2] Crawford's first point is denied.

### II. *Overpayment of Benefits*

In his second point, Crawford asserts that the commission erred in affirming the determinations that Crawford was overpaid benefits and would be expected to repay those benefits. The resolution of Crawford's first point disposes of the argument that the commission erred in affirming the determination that Crawford was overpaid benefits. As such, the sole remaining issue relates to the methods by which the division can recover the overpaid benefits.

---

**2.** This further demonstrates that the commission did not consider itself bound by the social security administration disability finding in violation of section 288.215.2.

## A. *Ripeness*

■ The division asserts that the issue regarding the methods for recovering the overpayments is not ripe because the division has not yet attempted recovery.

■ "[T]he ripeness doctrine allows a court 'to apply a pragmatic test to determine whether the agency action is sufficiently binding and sufficiently clear in scope and implications to be susceptible to judicial evaluation....'" *Missouri Ass'n of Nurse Anesthetists, Inc. v. State Bd. of Registration for Healing Arts*, 343 S.W.3d 348, 354 (Mo. banc 2011) (quoting *Missouri Soybean Ass'n v. Missouri Clean Water Comm'n*, 102 S.W.3d 10, 25 (Mo. banc 2003)). "Determining whether a particular case is ripe for judicial resolution requires a two-fold inquiry: a court must evaluate (1) whether the issues tendered are appropriate for judicial resolution, and (2) the hardship to the parties if judicial relief is denied." *Id.* at 27.

Regarding the fitness of the issue for judicial resolution, the division's notice of overpayment states that the overpayment is the result of Crawford's "error or omission" and specifically cites section 288.380 in informing Crawford that he "shall" have the overpayments deducted from future benefits and through billing and offsets against state tax refunds. The issue is fit for judicial resolution because it simply requires the application of the statutes pertaining to the division's authority to collect the overpayment. No further factual development is required for judicial resolution.

Crawford also faces hardship if judicial relief is denied. In its overpayment notices, the division has informed Crawford that the division "shall" recover the overpayment through a variety of methods, including direct billing. Crawford's hardship is obvious and imminent; the division has stated that it must, and presumably will, attempt to recover over $3,000 from him while he is unemployed and unable to work. The issue of what methods the division can utilize to collect the overpayments is ripe for review.

## B. *Collection Methods*

■ Repayment of unemployment benefits paid to ineligible claimants is addressed by sections 288.380.12, 288.380.13 and 288,380.14. Crawford asserts that the division can recover the overpayments only through section 288.380.13 by withholding benefits from future unemployment benefit awards. The division asserts that it can utilize the full range of collection methods authorized by section 288.380.14.

■ The primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue. *Parktown Imports, Inc. v. Audi of America, Inc.*, 278 S.W.3d 670, 672 (Mo. banc 2009). However, "[s]tatutory provisions relating to the same subject matter are considered in pari materia and are to be construed together." *Baldwin v. Director of Revenue*, 38 S.W.3d 401, 405 (Mo. banc 2001). In doing so, this Court attempts to read the legislation consistently and harmoniously. *Id.*

Section 288.380.12 provides:

Any person who, by reason of the nondisclosure or misrepresentation by such person or by another of a material fact, has received any sum as benefits pursuant to this chapter while any conditions for the receipt of benefits imposed by this chapter were not fulfilled in such person's case, or while he or she was disqualified from receiving benefits, shall, in the discretion of the division, either be liable to have such sums deducted from any future benefits payable to such person pursuant to this chapter or shall be liable to repay to the division for the unemployment compensation

fund a sum equal to the amounts so received by him or her.

Section 288.380.13 provides:

Any person who, by reason of any error or omission or because of a lack of knowledge of material fact on the part of the division, has received any sum of benefits pursuant to this chapter while any conditions for the receipt of benefits imposed by this chapter were not fulfilled in such person's case, or while such person was disqualified from receiving benefits, shall after an opportunity for a fair hearing pursuant to subsection 2 of section 288.190 have such sums deducted from any further benefits payable to such person pursuant to this chapter, provided that the division may elect not to process such possible overpayments where the amount of the same is not over twenty percent of the maximum state weekly benefit amount in effect at the time the error or omission was discovered.

Finally, section 288.380.14, added in 2006, provides:

Recovering overpaid unemployment compensation benefits shall be pursued by the division against any person receiving such overpaid unemployment compensation benefits through billing, setoffs against state and federal tax refunds to the extent permitted by federal law, intercepts of lottery winnings under section 313.321, RSMo, and collection efforts as provided for in sections 288.160, 288.170, and 288.175.

Subsections 12 and 13 provide for different collection methods depending on whether the overpayment was a result of misrepresentation by the claimant or an error or omission by the division that is not attributable to the claimant. If the claimant misrepresented facts to the division, then section 288.380.12 authorizes the division to require the claimant to repay the overpaid benefits. In contrast, if the overpayment is the result of an error or omission, then section 288.380.13 authorizes less aggressive collection methods, namely, deduction from future unemployment benefits.

While subsections 12 and 13 authorize different collection measures depending on whether the overpayment was a result of a misrepresentation or a simple mistake, subsection 14 provides that "any person" to whom unemployment benefits were overpaid is subject to billing, income tax setoffs and a number of other collection methods authorized in chapter 288.

 The division contends that the plain language of subsection 14 means that it can employ against Crawford the entire range of collection methods authorized by the subsection 14. The problem with the division's interpretation of subsection 14 is that it eliminates the hierarchy of collection methods established in subsections 12 and 13. "Repeal by implication is disfavored, and if two statutes can be reconciled then both should be given effect." *St. Charles County v. Dir. of Revenue*, 961 S.W.2d 44, 47 (Mo. banc 1998). Subsections 12, 13, and 14 can each be given effect and reconciled by reading subsection 14 as a further elaboration of the measures the division may undertake to collect from those who are liable to repay under subsection 12.

This interpretation further is supported by the plain language of section 288.381, which, like subsection 14, was first enacted in 2006. In pertinent part, section 288.381 provides:

1. The provisions of subsection 6 of section 288.070 notwithstanding, benefits paid to a claimant pursuant to subsection 5 of section 288.070 to which the claimant was not entitled based on a subsequent determination, redetermination or decision which has become final, shall be collectible by the division as

provided in subsections 12 and 13 of section 288.380.

Section 288.381 unambiguously provides that when the division retroactively determines that a claimant has been overpaid, the overpayment shall be collected pursuant to the collection methods outlined in subsection 12 and 13. Section 288.381 further demonstrates that subsection 14 was not intended to repeal subsections 12 and 13.

The commission's decisions are reversed to the extent that they authorize the division to collect the overpayment from Crawford pursuant to sections 288.380.12 and 288.380.14. In all other respects, the commission's decision is affirmed.

RUSSELL, BRECKENRIDGE, FISCHER, STITH and PRICE, JJ., and BYRN, Sp.J., concur.

DRAPER, J., not participating.