

# In the Missouri Court of Appeals
# Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| VICKI ARMOUR-MOTTAZ, | ) | No. ED100014 |
| Claimant/Appellant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Appeal from the Labor and |
| | ) | Industrial Relations Commission |
| DIVISION OF EMPLOYMENT | ) | 13-02929 R-A, 13-02932 R-A, 13- |
| SECURITY, | ) | 02934 G-A, 13-02936 G-A, 13-02937 R-A |
| Respondent. | ) | & 13-02938 R-A |
| | ) | |
| | ) | FILED:  April 1, 2014 |

### OPINION

In this consolidated appeal, Vicki Armour-Mottaz (Claimant) appeals from the final

decision of the Labor and Industrial Relations Commission (the Commission) affirming the

decisions of the Appeals Tribunal, which affirmed the previous determinations by the Division of

Employment Security (the Division), finding that Claimant had been ineligible to receive

unemployment compensation for certain periods and had been overpaid unemployment

compensation.  We affirm the final decision of the Commission.

### Factual and Procedural Background

Our review of the whole record reveals the following relevant facts:

Claimant worked as a certified nursing assistant (CNA) for Seniors Home Care

(Employer) from April to June 2012.  During her employment with Employer, Claimant was

under a doctor's restriction not to lift patients due to the condition of her back, her need for knee

replacements, and her osteoarthritis. Claimant had notified Employer of her conditions prior to her employment. Claimant earned $10.85 per hour and worked as many as 60 hours per week. Claimant performed her last day of work for Employer on June 6, 2012. Employer discharged Claimant for unprofessional conduct.

Claimant subsequently filed a claim for unemployment benefits. Claimant filed for weekly unemployment benefits for the weeks of June 6, 2012, through August 28, 2012, and the Division paid Claimant unemployment benefits of $320 per week for each of those 12 claimed weeks. Claimant received federal emergency unemployment compensation benefits of $320.00 per week for the two weeks of September 1, 2012, and September 8, 2012. Claimant later filed for weekly unemployment benefits for the weeks of September 15, 2012, through January 19, 2013, and the Division paid Claimant unemployment benefits of $315 per week for each of those 17 claimed weeks. For each claimed week, Claimant was required to report to the Division and to make three work contacts seeking employment. Claimant informed the Division that she was able and available for full-time work and that she was searching for work.

Meanwhile, in July 2012, Claimant applied for Social Security Disability (SSD) benefits. Claimant filed for SSD benefits because she had a back injury, had osteoarthritis in all of her joints, needed two knee replacements, had a 10-pound lifting restriction, could no longer perform CNA work, had no other work training, and was 50 years old. On November 27, 2012, the Social Security Administration informed Claimant that she would begin receiving SSD benefits in December 2012, which she received on January 23, 2013.

In January 2013, the Division issued six separate determinations finding that Claimant had been ineligible to receive unemployment benefits during certain periods because she was not able to work, she had willfully failed to disclose or had falsified facts that would have caused her

2

to be ineligible, or she had limited her availability to "part-time work so she [could] receive social security disability." The Division further found that Claimant had been overpaid unemployment benefits.[1] Claimant filed a single appeal to all six determinations.

Following a consolidated hearing in which Claimant, Employer, and a representative of the Division testified, the Appeals Tribunal affirmed the Division's determinations. Specifically, the Appeals Tribunal found (1) that Claimant had willfully failed to disclose or had falsified facts that would have caused her to be ineligible for benefits; (2) that Claimant was not able to work because she was unable to lift patients and was under a weight-lifting restriction due to her back condition, a knee condition, and osteoarthritis; (3) that Claimant's denial of the weight-lifting restriction was not credible; (4) that Claimant was not available for work and had not been looking for full-time work given that she had offered no evidence establishing she was looking for full-time positions and given that her testimony on this issue was not credible; and (5) that Claimant's physical condition did not change between June 2012 and December 2012 after Claimant had applied for SSD benefits and was approved. The Appeals Tribunal affirmed the Division's determinations that Claimant had been overpaid and, therefore, assessed penalties on those overpayments. Claimant appealed the Appeals Tribunal's decisions to the Commission. The Commission adopted and affirmed the decisions of the Appeals Tribunal, finding that the Appeals Tribunal's decisions were fully supported by the competent and substantial evidence on the whole record and were in accordance with the relevant provisions of Missouri's Employment Security Law.

---

[1] Claimant alleges that the total amount of overpayment was determined to be $5355 plus a 25% penalty. The Division determined that Claimant owed a total of $9835 in overpayments plus a 25% penalty. Claimant's calculation reflects only one of three overpayment determinations by the Division in this consolidated appeal.

This consolidated appeal followed. Additional facts will be discussed as necessary to our analysis of the issues on appeal.

## Standard of Review

On appeal, in the absence of fraud, the findings of fact made by the Commission shall be conclusive and binding, and the jurisdiction of the appellate court shall be confined to questions of law. Section 288.210 RSMo[2]; Schultz v. Division of Employment Sec., 293 S.W.3d 454, 458 (Mo. App. E.D. 2008). We will affirm the Commission's decision unless we find, upon a review of the whole record, that the Commission acted without or in excess of its powers; that the decision was procured by fraud; that the facts found by the Commission do not support the award; or that decision was not supported by sufficient competent evidence. Section 288.210; Fendler v. Hudson Services, 370 S.W.3d 585, 588 (Mo. banc 2012); Adams v. Division of Employment Sec., 353 S.W.3d 668, 672 (Mo. App. E.D. 2011). The appellate court defers to the Commission's determinations on issues of fact and witness credibility and the weight to be given testimony. Fendler, 370 S.W.3d at 588. The appellate court reviews questions of law *de novo*. Id. at 588-89. Generally, a claimant bears the burden of proving that she is entitled to unemployment benefits. Id.

## Point I

In her first point on appeal, Claimant claims the Commission erred in affirming the decisions of the Appeals Tribunal concluding that Claimant committed fraud by applying for SSD benefits at the same time she was receiving unemployment benefits because the decision was not supported by sufficient competent evidence in the record. Claimant also claims that, under Crawford v. Division of Employment, 376 S.W.3d 658 (Mo. banc 2012), an award of SSD

---

[2] All statutory references are to RSMo 2000, as amended, unless otherwise indicated.

benefits that occurs while a person is receiving unemployment compensation is not collectible as if it were fraud but merely as an error, omission, or lack of knowledge of material fact by the Division. Claimant argues that no state or federal law prevents a person from seeking both SSD benefits in addition to unemployment compensation and that Claimant received unemployment compensation and SSD benefits simultaneously for only one month.

In its Responsive Brief, the Division counter argues that the Commission did not err in finding that Claimant received unemployment benefits by intentionally misrepresenting material facts because competent and substantial evidence supports the finding in that Claimant told the Division she was able and available for work when she had substantial physical problems and was limiting her availability for work.

Under Missouri law, no person shall make a false statement or representation knowing it to be false or knowingly fail to disclose a material fact, to obtain or increase any benefit or other payment pursuant to this chapter, or under an employment security law of any other state or of the federal government either for himself or herself or for any other person. Section 288.380.3. Any individual or employer who receives or denies unemployment benefits by intentionally misrepresenting, misstating, or failing to disclose any material fact has committed fraud. Section 288.380.9(1). After the discovery of facts indicating fraud, a deputy shall make a written determination that the individual obtained or denied unemployment benefits by fraud and that the individual must promptly repay the unemployment benefits to the fund. Id. In addition, the deputy shall assess a penalty equal to twenty-five percent of the amount fraudulently obtained or denied. Id. If division records indicate that the individual or employer had a prior established overpayment or record of denial due to fraud, the deputy shall, on the present overpayment or

determination, assess a penalty equal to one hundred percent of the amount fraudulently obtained. Id.

"Nothing in the social security regulations prohibits the [Division] from finding retroactively that a recipient of SSDI benefits is ineligible for state unemployment benefits because, in fact, they are not able to work." Crawford v. Division of Employment Sec., 376 S.W.3d 658, 662 (Mo. banc 2012). Under said regulations, a person can receive federal disability benefits even if she is able to engage in part-time work. Crawford, 376 S.W.3d at 662. However, regardless of whether the claimant is qualified to receive or is receiving federal disability benefits, where substantial and competent evidence in the record supports a finding that the claimant was unable to work due to a disability, the Commission may properly find that the claimant was not entitled to state unemployment benefits. Id.

Claimant's reliance on Crawford to argue that she did not commit fraud is misplaced. Claimant's case is distinguishable from Crawford because Crawford involved non-fraudulent overpayments and the manner in which the Division could collect those overpayments.

In Crawford, the claimant had applied for SSD benefits on the advice of his doctor because he had a mental condition that rendered him unable to work. 376 S.W.3d at 660. While the claimant was waiting for a determination on his SSD benefits, he applied for unemployment benefits, which required the claimant to show he was unemployed but able to work. Id. at 660, 661. The Division initially awarded unemployment benefits to the claimant, which he received for several months. While he was receiving the unemployment benefits, the claimant was awarded SSD benefits on a finding that he was disabled due to his mental condition. Id. at 661. The claimant notified the Division that he had been determined disabled and eligible for SSD benefits. Id. The Division retroactively decided that the claimant should not have received

6

unemployment benefits while awaiting the determination on his SSD benefits because the claimant had been ineligible due to his inability to work. Id. Significantly, the Division did not allege that the claimant had committed fraud; rather, the Division reconsidered its prior determination that the claimant was eligible for unemployment benefits based on the claimant's notice that he had been determined disabled and eligible for SSD benefits. Id. The Division thereafter sought to recover the overpaid unemployment benefits through deductions from future benefits as well as through direct billing and offsets against the claimant's tax refunds. Id. at 664. Both the Appeals Tribunal and the Commission affirmed the Division's decision, and the Commission specifically recognized that the claimant had been willing to work even though he was unable to do so. Id. at 661.

On appeal, the Missouri Supreme Court affirmed the Commission's determination that the claimant had been unable to work due to his mental disability, and, therefore, was ineligible for unemployment benefits. Id. at 664. However, the Supreme Court reversed the Commission's decision regarding the methods the Division could use to collect the overpaid unemployment benefits, reasoning that the overpayment was not the result of the claimant's misrepresentation of facts regarding his ability to work even though the claimant had also applied for SSD benefits and was later determined to be disabled. Id. at 660, 665.

Here, we emphasize that the Commission's decision was not based solely on the fact that Claimant had applied for and/or had received SSD benefits while she was simultaneously claiming and receiving state unemployment benefits. Rather, the Commission's decision was based on competent and substantial evidence on the whole record indicating that Claimant intentionally misrepresented to the Division her ability and availability for work so that she could receive state unemployment benefits.

7

According to the record, for each week Claimant filed for unemployment benefits, Claimant informed the Division that she was able and available for full-time work and that she was seeking full-time work. However, the evidence in the record established that Claimant intentionally misrepresented her ability, availability, and willingness to work full-time.

At the hearing before the Appeals Tribunal, Claimant testified that she had previously worked for Employer as a caregiver for elderly individuals but that she "could not do the heavy lifting." Claimant testified that she had applied for CNA positions during the weeks she had filed for unemployment compensation. Claimant testified that she would tell the potential employers about her CNA experience but would ask whether they had a position that did not require heavy lifting. Claimant testified that she applied for SSD benefits in July 2012 because of her back condition, her need for two knee replacements, and osteoarthritis. Claimant further testified that she did not work for any employers and that she suffered from her physical conditions during the time she was filing for unemployment benefits and waiting for a determination of disability. A representative of the Division testified that the reason the Division had determined Claimant owed overpaid unemployment benefits plus a penalty amount was because Claimant had "answered less than truthfully on repeated occasions . . . knowingly provided false information about her full ability . . . to work."

Other evidence before the Appeals Tribunal showed that Claimant had intentionally misrepresented her ability, availability, and willingness to work full-time because she was disabled and was limiting her job search while telling the Division otherwise.

In statements to the Division, Claimant stated that she was able to work full-time as a CNA but that her doctor had issued a 10-pound lifting restriction at some time in the past that Claimant could not remember, "probably several years ago." Claimant also made statements to

8

the Division that she "can't do the CNA work anymore," that she had no other job training, that she had not been "looking for a specific kind of work," and that she had "contacted hospitals and told them [she] was a CNA, but . . . couldn't lift." Claimant also told the Division that she was "under doctor's instructions to not work in [her] former field as a CNA" and that she would "be receiving disability for [her] restriction with lifting." Claimant told the Division that she had contacted employers about telephone, clerical, and bookkeeping positions, but no one would hire her because all of those jobs required job-related experience. Claimant told the Division that she had also contacted employment agencies, but the only jobs they had available were for factory work that required heavy lifting, which she could not do. Claimant told the Division that she wanted to collect unemployment until she received her first SSD benefits check. Additionally, Employer sent two letters to the Division regarding Claimant's claim for unemployment benefits stating that Claimant had been offered work in the past but had declined the offers. On one occasion, Claimant told Employer that she was declining the work because she believed accepting the work would adversely affect her receipt of unemployment benefits. On another occasion, Claimant told Employer that she was declining the work because her attorney had advised her to earn only $600 per month. Given that other evidence had established Claimant sometimes worked 60 hours per week at $10.85 per hour, Claimant would not have been working full-time if she earned only $600 per month.

All of this evidence indicates that Claimant was not credible and that she intentionally misrepresented material facts regarding her ability and availability for full-time work. Accordingly, the Commission did not err in affirming the decisions of the Appeals Tribunal because the decisions were supported by sufficient competent evidence in the record. Claimant's first point on appeal is denied.

Because Claimant's second and third points on appeal involve related issues and analyses, we have combined them and address them together.

In her second point on appeal, Claimant claims the Commission erred in affirming the decisions of the Appeals Tribunal concluding that Claimant was ineligible for benefits due to an inability to work and, thus, owed an overpayment of unemployment compensation benefits to the Division because the decisions were not supported by sufficient competent evidence in the record. Claimant argues that no state or federal law prevents a person from seeking both SSD benefits in addition to unemployment compensation and that Claimant received unemployment compensation and Social Security benefits simultaneously for only one month.

In her third point on appeal, Claimant claims the Commission erred in affirming the decisions of the Appeals Tribunal finding that Claimant was unable to work from June 2012 to December 2012 because the finding was not supported by sufficient competent evidence in the record in that Claimant had worked as much as 60 hours per week in March, April, and part of June in 2012 and no evidence refuted Claimant's testimony about her ability to work.

In Missouri, a claimant who is unemployed and has been determined to be an insured worker shall be eligible for benefits for any week only if the deputy finds that: (1) the claimant has registered for work at and thereafter has continued to report at an employment office in accordance with such regulations as the division may prescribe; and the claimant is able to work and is available for work. Section 288.040.1(1) and (2). No person shall be deemed available for work unless such person has been and is actively and earnestly seeking work. Section 288.040.1(2).

Claimant's second and third points are without merit. As stated in our analysis of Claimant's first point, the competent and substantial evidence in the record established that Claimant's physical conditions during the time she filed for unemployment benefits rendered her unable to work. Claimant's own testimony and statements to the Division established that Claimant could no longer perform the job duties of a CNA, particularly lifting more than 10 pounds. Notably, Claimant had informed the Division that she wanted to collect unemployment benefits until she received her first SSD benefits check. Most significantly, the evidence also established that Claimant had limited her job searches to positions she either could not perform or for which she was not qualified. Furthermore, we find of no consequence that Claimant worked as much as 60 hours per week in the months prior to her filing for unemployment benefits given that she also filed for SSD benefits within a few weeks of her discharge from Employer. The fact that Claimant applied for both unemployment benefits during the same time frame that she was waiting to collect SSD benefits due to disability adversely affected her credibility because she admitted an ability and availability to work by applying for unemployment benefits. See Jernigan v. Sullivan, 948 F.2d 1070, 1074 (8th Cir. 1991). Accordingly, in this case, Claimant failed to establish her burden of proof that she was able and available for work during the time she sought unemployment compensation. The Commission's factual and credibility determinations are supported by the record as a whole.

The Commission did not err in affirming the Appeals Tribunal's decisions that Claimant was ineligible for unemployment benefits due to her intentional misrepresentations regarding her ability and availability to work. The Commission's decision was not based solely on Claimant's approval for SSD benefits but on the record as a whole. Claimant's second and third points on appeal are denied.

11

Conclusion

The decision of the Commission is affirmed.

_____
Mary K. Hoff, Presiding Judge


Kurt S. Odenwald, Judge, and
Angela Turner Quigless, Judge, concur.