James **STEPHENSON**, Appellant,

v.

**DIVISION OF EMPLOYMENT SECURITY**, Respondent.

No. WD 76162.

Missouri Court of Appeals, Western District.

Oct. 22, 2013.

John J. Ammann and Paul L. Schmitz, St. Louis, MO, for appellant.

Bart A. Matanic, Jefferson City, MO, for respondent.

Before Division Four: JAMES E. WELSH, Chief Judge, Presiding, CYNTHIA L. MARTIN, Judge and TERRY TSCHANNEN, Special Judge.

CYNTHIA L. MARTIN, Judge.

James Stephenson ("Stephenson") appeals from the Labor and Industrial Relations Commission's ("the Commission") decision that concluded Stephenson was ineligible for unemployment benefits because he voluntarily left his employment without good cause. Stephenson argues that the Commission erred in three re-

spects: (1) in failing to consider the threshold issue of whether Stephenson's employment was unsuitable before it determined that Stephenson did not have good cause to leave work; (2) in concluding that Stephenson quit work without good cause; and (3) in refusing to allow Stephenson to present eyewitness testimony about the events leading to his separation and in refusing to allow Stephenson to present evidence regarding his employer's intent to reduce his hourly rate of pay. We find the first point on appeal dispositive, and reverse and remand for proceedings consistent with this Opinion.

### Factual and Procedural History

Stephenson began working as a full-time service employee for Kendall Equipment Material Handling, LLC ("Kendall Equipment") on September 10, 2012. Stephenson had a meeting with his supervisors on October 4, 2012, to discuss his "productivity," "general work," and "following directions." Stephenson's supervisors indicated during the meeting that Stephenson's rate of pay would be reduced from $16 per hour to $12 per hour because "[a]fter three weeks of working it was discovered that [Stephenson] did not have the skills he said he had." Approximately fifteen to twenty minutes into the meeting, Stephenson stood up and left the room while stating that "I guess I'm being fired." One of Stephenson's former supervisors testified, however, that Kendall Equipment had no intention of firing Stephenson at the meeting and did not want Stephenson to quit.

Stephenson filed a claim for unemployment benefits on October 5, 2012. The Division of Employment Security Deputy ("the Division Deputy") concluded that Stephenson was eligible for unemployment benefits. The Division Deputy found that Stephenson was discharged from work, and that the discharge was not for misconduct because Kendall Equipment was dissatisfied with Stephenson's work performance even though Stephenson was working to the best of his ability.

Kendall Equipment appealed the Division Deputy's decision to the Appeals Tribunal. The Appeals Tribunal conducted a telephone hearing on December 12, 2012. The Referee indicated that the purpose of the hearing was to "tak[e] testimony ... on the separation issue and decid[e] under [section] 288.050 whether it's [a] quit or a discharge and whether any disqualification applies." Stephenson and one of his former supervisors testified at the hearing.

The Appeals Tribunal reversed the Division Deputy's decision. The Appeals Tribunal concluded that Stephenson was ineligible for unemployment benefits because he voluntarily left employment and did not have good cause for doing so. In its decision, the Appeals Tribunal stated:

> Good faith is an essential element of the standard of good cause, and good faith requires a reasonable effort to resolve the problem with the employer before quitting. The claimant just walked out in the middle of the meeting. Calling a meeting to discuss productivity with the expectation the claimant attend was reasonable.... The claimant abruptly left and did not say anything before he made his decision to leave. Therefore, the employer did not have an opportunity to remedy the situation before he quit and the claimant has not shown good cause for leaving on that basis.

Stephenson filed a timely appeal of the Appeals Tribunal's decision to the Commission. The Commission affirmed and adopted the decision of the Appeals Tribunal, finding that it was "fully supported by the competent and substantial evidence on the whole record and it is in accordance

with the relevant provisions of the Missouri Employment Security Law."

Stephenson appeals.

### Standard of Review

Appellate review of the Commission's decision in an unemployment compensation case is governed by section 288.210.[1] *Wooden v. Div. of Emp't Sec.,* 364 S.W.3d 750, 752 (Mo.App. W.D.2012). Section 288.210 provides that our power to "modify, reverse, remand for rehearing, or set aside the decision of the commission" is limited to finding one of the following grounds:

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

"The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law." Section 288.210. Thus, while we give deference to the Commission's findings of fact, we " '[are] not bound by the Commission's conclusions of law or the Commission's application of law to the facts.' " *Wooden,* 364 S.W.3d at 753 (quoting *Timberson v. Div. of Emp't Sec.,* 333 S.W.3d 30, 32 (Mo.App. W.D.2010)).

### Analysis

Stephenson presents three arguments on appeal. First, Stephenson claims that the Commission erred in finding that he was ineligible for benefits because he voluntarily quit without good cause in that it

failed to consider, as required by statute, the threshold question of whether Stephenson was "unsuitable" for his work. Second, Stephenson contends that the Commission erred in concluding that he quit work without good cause. Third, Stephenson argues that the Commission erred in failing to make a complete record in that it refused to allow Stephenson to present eyewitness testimony about the events leading to his separation and in refusing to allow Stephenson to present evidence regarding his employer's intent to reduce his hourly rate of pay. Because we find the first point relied on dispositive, we need not address Stephenson's second and third points on appeal.

Stephenson's first point relied on asserts that section 288.050.1(1)(c) requires that the Commission inquire as to the suitability of work before considering whether the employee had good cause to quit work if the employee quits within twenty-eight calendar days of the first day worked. Section 288.050.1 provides, in relevant part:

Notwithstanding the other provisions of this law, a claimant shall be disqualified for waiting week credit or benefits until after the claimant has earned wages for work insured pursuant to the unemployment compensation laws of any state equal to ten times the claimant's weekly benefit amount if the deputy finds:

(1) That the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer.... *The claimant shall not be disqualified:*

. . .

(c) If the deputy finds the individual quit work, which would have been determined not suitable in accordance with paragraphs (a) and (b) of subdivision (3) of this subsection, *within twenty-eight*

---

1. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

*calendar days of the first day worked....*

(Emphasis added.)

It is uncontested that Stephenson's last day of work was less than twenty-eight days from his first day of work, requiring a suitability determination. It is uncontested that neither the Appeals Tribunal nor the Commission considered or made a suitability determination. Finally, it is uncontested that had suitability been considered, and had the work been found not suitable, Stephenson would not have been disqualified for benefits.

■ The Division of Employment Security ("the Division") argues that Stephenson's first point relied on is not preserved for appeal. The Division claims that because Stephenson did not raise the issue of the suitability of his job with Kendall Equipment before either the Appeals Tribunal or the Commission, Stephenson is precluded from complaining on appeal about the Commission's failure to consider suitability.

■ Our Supreme Court has repeatedly asserted that " '[a]n issue appropriate for, but not addressed with the commission, cannot be litigated on appeal.' " *See, e.g., Crawford v. Div. of Emp't Sec.,* 376 S.W.3d 658, 662 (Mo. banc 2012) (quoting *St. John's Mercy Health Sys. v. Div. of Emp't Sec.,* 273 S.W.3d 510, 515 (Mo. banc 2009)). At first blush, this principle might seem to preclude our consideration of Stephenson's first point relied on. However, the principle does not apply when the issue asserted on appeal is necessarily encompassed within the issue decided by the Commission. That is because "[t]he deputy, appeals tribunal, and commission ha[ve] an obligation to apply all laws that pertain to the issue [raised by the claimant]." *Adams v. Div. of Emp't Sec.,* 353 S.W.3d 668, 673 (Mo.App. E.D.2011) (internal quotation marks omitted) (holding that claimant's argument that a request was timely at the Commission level was sufficient to preserve a more specific timeliness argument raised by the claimant on appeal).

Stephenson appeared before the Appeals Tribunal as the prevailing party following a determination by the Division Deputy that he was discharged from employment. He had no reason to raise "suitability" as a result. Stephenson's Application for Review to the Commission challenged the Appeals Tribunal's conclusion that he voluntarily quit without good cause. This argument necessarily required the Commission to consider and apply section 288.050.1. That statute, by its express terms, requires the Commission to consider the threshold issue of whether a job was suitable before it can determine if the claimant is ineligible for unemployment benefits if the employee voluntarily left the position within twenty-eight days of the first day of work. As such, "suitability" is encompassed within the broader inquiry of eligibility for unemployment benefits following a voluntarily quit, and is essential to that inquiry when the employee quits within twenty-eight days of the first day of employment. By challenging the conclusion that he voluntary quit without good cause, Stephenson sufficiently preserved whether the Commission followed the law in its application of section 288.050.1.

Our conclusion is consistent with *Quirk v. Premium Homes, Inc.,* where our Eastern District addressed whether the Commission erred in failing to consider "whether the position [the claimant] left after three days of employment ... was 'suitable employment' as required by section 288.051.1(1)(c)." 999 S.W.2d 306, 307 (Mo. App. E.D.1999). After quoting the relevant statutory provisions at length, the court held:

It is clear from the provisions quoted that, before reaching the "just cause" determination, the Commission is first *required* to consider and decide a threshold issue with respect to claimants who quit their jobs within twenty-eight calendar days of the first day worked. In such cases, the Commission *must* first decide whether the work would have been determined not suitable in accordance with section 288.050.1(3)(a) and (b).

*Id.* at 308 (emphasis added). The court held that once the referee elicited testimony that indicated the claimant quit her job after only three days, the referee was required to "amend[ ] the issues for decision to include a determination of whether the work would have been considered not suitable according to the criteria set forth in section 288.050.1(3)(a) and (b)." *Id.* at 308–09. Instead, the referee continued to elicit testimony that focused solely on the issues of whether the claimant left work voluntarily for good cause and whether the claimant was discharged for misconduct. *Id.* at 309. Because the referee failed to consider suitability despite its obvious relevance in light of the date the employee left employment, the court reversed the Commission's decision. *Id.*

■ *Quirk* is indistinguishable from Stephenson's appeal. Before the hearing began in the Appeals Tribunal, the referee announced that she would be "taking testimony . . . on the separation issue and deciding whether under [section] 288.050 whether it's [a] quit or a discharge and whether any disqualification applies." One of Stephenson's supervisors was the first witness to testify during the hearing. He stated that Stephenson was employed by Kendall Equipment from September 10, 2012, to October 4, 2012. At that point, the referee was charged with knowledge that Stephenson was employed with Kendall Equipment for less than twenty-eight calendar days. The referee was thus required to amended the issues for decision to include whether Stephenson's position with Kendall Equipment was suitable according to section 288.050.1(3)(a) and (b). Instead, the referee continued to elicit testimony regarding the previously announced issues for the hearing, and the Appeals Tribunal issued a decision that solely discussed whether Stephenson had good cause to leave his job with Kendall Equipment. By affirming and adopting the decision of the Appeals Tribunal, the Commission similarly erred in failing to consider whether Stephenson's work with Kendall Equipment was suitable in accordance with section 288.050.1(3)(a) and (b).

Because the suitability issue was preserved for our review, and because it was the referee's affirmative obligation to consider suitability as required by statute once the required revealed that Stephenson's employment tenure was less than twenty-eight days, we must reverse the Commission's decision.

■ Stephenson argues that we need not remand his case for a suitability determination, and that the record is sufficient to permit us to conclude that his position with Kendall Equipment was unsuitable applying the factors set forth in section 288.050.1(3)(a).[2] Section 288.050.1(3)(a) provides that, in determining whether work was unsuitable, the Commission must consider:

> the degree of risk involved to the individual's health, safety and morals, the individual's physical fitness and prior

---

**2.** While section 288.050.1(1)(c) provides that the determination of suitability must be made in accordance with section 288.050.1(3)(a) and (b), subdivision (b) is clearly inapplicable to the facts of this case and will not be discussed in this Opinion.

training, the individual's experience and prior earnings, the individual's length of unemployment, the individual's prospects for securing work in the individual's customary occupation, the distance of available work from the individual's residence and the individual's prospect of obtaining local work. . . .

Stephenson claims that Kendall Equipment initial rate of pay was $16 per hour but that his supervisors informed him that the rate of pay would be reduced to $12 an hour because "[a]fter three weeks of working it was discovered that [Stephenson] did not have the skills he said he had." Stephenson claims that Kendall Equipment has conceded one of two scenarios: either that Kendall Equipment was dishonest in its representation of the rate of payment for the position, or that Stephenson did not have the sufficient skills to perform the job. According to Stephenson, either concession precludes a finding of suitability so that we must conclude not only that the Commission erred in failing to consider suitability, but that the record precludes a finding of suitability.

Stephenson points to the decision in *Quirk* to support his position that remand is not necessary to determine suitability. In *Quirk*, the evidence established that, in her prior job, the claimant earned approximately $41,000 per year. 999 S.W.2d at 309. After being unemployed for one month, the claimant accepted a new position with a base salary of approximately $26,000 per year and the promise to earn overtime compensation. *Id.* When the claimant began working, she learned that she would be paid a salary so that she would not be eligible for overtime compensation. *Id.* Further, the claimant discovered that, despite having a similar position previously, she did not know how to operate the computer system and no one was willing to teach her how to use it. *Id.* The court found that the claimant's prior training did not prepare her to use the employer's computer system and that her prior earnings were well in excess of what she would be making in the new position. *Id.* The court used those facts to conclude that the facts elicited at the hearing "preclude[d] a finding that the job was suitable" and then remanded the case with directions to reinstate the claimant's unemployment benefits. *Id.*

The facts developed at Stephenson's hearing are not as clear as those developed in *Quirk* and do not preclude a finding that his position with Kendall Equipment was suitable. While there is evidence in the record that establishes Stephenson's rate of pay would have been reduced from $16 per hour to $12 per hour, there is no other evidence that relates to the remaining factors set forth in section 288.050.1(3)(a). As Stephenson acknowledges in his brief, we cannot discern from the record "Stephenson's previous skills, how he allegedly misrepresented those skills, or how [Kendall Equipment] determined that his skills were only valued at $12.00 an hour rather than the $16.00 an hour rate he was promised at the time he was hired." Further, there is no evidence in the record about Stephenson's prior jobs and their rate of pay. Though the limited evidence before us would be sufficient to permit us to affirm a Commission finding of unsuitability, the evidence is not sufficient to preclude a finding of suitability. Thus, we must remand the cause to the Commission with directions to order another hearing before the Appeals Tribunal for consideration of the suitability of Stephenson's employment with Kendall Equipment pursuant to section 288.050.1(1)(c) as an essential precursor to determining whether Stephenson had good cause for voluntarily leaving work.

## Conclusion

We reverse the Commission's previous denial of unemployment benefits to Stephenson. We remand this cause to the Commission with directions to order another hearing before the Appeals Tribunal for consideration of the suitability of Stephenson's job with Kendall Equipment as required by section 288.051.1(1).

All concur.